IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| E'DRICK BROWN,<br><br>                    Petitioner,<br><br>     vs.<br><br>JAMES WALKER,[1] Warden, California<br>State Prison, Sacramento,<br><br>                    Respondent. | Case No. 2:08-cv-01401 (JKS)<br><br><br>MEMORANDUM DECISION |

        Petitioner, E'Drick Brown, a state petitioner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Brown is currently in custody of the California Department of Corrections, incarcerated at the Sacramento State Prison in Represa, California. Respondent has filed an answer,[2] and  Brown has filed a traverse.[3]

## I.  FACTUAL BACKGROUND

        The following factual background is taken from the reasoned decision of the California Court of Appeal:[4]

---

        [1] James Walker, Warden, California State Prison, Sacramento, is substituted for Robert Horel, Warden, Pelican Bay State Prison.  Fed. R. Civ. P. 25(d).

        [2] Docket No. 22.

        [3] Docket No. 32.

        [4] The charges filed against Brown were based on two separate incidents, which took place on two different days.

1

A. FEBRUARY 7, 2003 INCIDENT (COUNTS 1,2,3,4):

Reyes Hernandez and his twin brother Raciel were friends with defendant Martinez in junior high school. In high school, Reyes and Raciel became involved with the Sureño street gang. Martinez is a validated member of the rival Norteños gang. Reyes and Martinez had two fights in the ninth grade. Since that time, they had limited their antipathy to " 'mad doggin' " or giving each other dirty looks as a sign of disrespect.

At around 3:00 p.m. on February 3, 2003, Jaime Delhorno picked up Reyes and Raciel at their residence on Melrose Drive and drove toward Edgar Soto's house on Karl Drive. Delhorno drove his Chevy Tahoe, Reyes sat in the front passenger seat, and Raciel sat in the back seat behind Reyes. As the young men drove past Martinez's residence on Karl Drive, Reyes saw Martinez getting into his car with defendant Brown. Reyes and Martinez made eye contact.

When the three in the Chevy Tahoe reached their destination, Reyes got out of car to meet Soto. Martinez and Brown drove up five minutes later in a green Ford Taurus and parked in front of Delhorno's vehicle. Reyes had never met Brown. Martinez, the driver, was visibly angry and told Reyes in a loud voice, "[W]e got some funk" meaning "[W]e got a problem." Reyes replied, "[W]hatever," and approached to within three and a half feet of defendants' car. Reyes, who was wearing a blue "L.A." hat signifying his Sureño affiliation, told Martinez they could fight if he got out of the car. Martinez responded, " 'You don't want me to send you back to L.A.' " Reyes said, " '[Y]ou got to do what you got to do.' " Martinez replied, " '[Y]ou don't want me getting out the car and start buckin',' " meaning "shooting." At that point, Martinez lifted the car's armrest and displayed a black, semiautomatic handgun. Brown, who was sitting in the front passenger seat, told Reyes, " '[Y]ou don't want to mess with no Niggas.' Reyes suggested defendants follow him to his mother's house. Reyes knew his five brothers were at home and there were cameras outside the residence. He got back in Delhorno's car and said that defendants had a gun. Reyes told Delhorno to drive to his mother's house. When they realized defendants were, in fact, following in their car, Delhorno started speeding. As they turned on Craighurst Way, Reyes saw Brown lean out of the Taurus and fire three or four shots at the Chevy Tahoe in quick succession. Reyes, Raciel and Delhorno ducked down while Delhorno kept driving. One of the bullets hit the back door of the Chevy Tahoe and stopped behind Raciel's seat. Defendants continued to follow Delhorno's car at a distance of three to four car lengths. Delhorno's mother heard the gun shots as they were driving up, and called the police. Police recovered three or four 40-caliber shell casings from the street where the shooting took place.

Unable to locate Martinez or his vehicle, Sacramento County Sheriff's detectives obtained a search warrant for Martinez's residence. Both defendants were present when the search was conducted. Detectives discovered a stolen, loaded, nine-millimeter handgun under the bed. They also found items associated with Norteño gangs.

In a subsequent interview with Sacramento County Sheriff's Detective Elaine Stoops, Martinez admitted that: (1) he was involved in a verbal altercation with Reyes on February 7, 2003; (2) he followed Reyes and his friends in his car because they were "mugging him"; (3) he had been involved in three prior fists fights with Reyes because of their rival gang affiliations; (4) he challenged Reyes to a fight on February 7, 2003; (5) there were gunshots fired at the scene; and (6) he was a Norteño gang member.

Brown stated in his interview with Detective Stoops that he was "not really too familiar with this Sureño Norteño thing," even though the subject of street gangs had not come up.

Detective Luis Aguilar specialized in Hispanic gangs in the sheriff's gang suppression unit. It was Aguilar's opinion Brown was affiliated with the Norteño gang, based on Brown's association with a gang member and his involvement in a gang-related crime. Aguilar also opined the shooting was committed at the direction of and in

association with the Norteño gang.

## B.  APRIL 3, 2003 INCIDENT (COUNTS 5, 6, 7):

In April 2003, Jeffrey Perrine lived with his mother on Buttonwood Way in Citrus Heights.  He had a bedroom in the garage.  Perrine's room contained an entertainment center, two 19-inch televisions, a stereo surround sound system, a DVD player, a 200-disc CD player, a receiver, and a sound system from his car.  One of the televisions was connected to outdoor surveillance cameras.  Perrine used an electronic key pad to gain entrance to the house through the garage door.

Perrine was a student at Sierra College, but did not work due to injuries suffered in a recent car accident.  He lived off the insurance check and support from his mother.  To pay his car insurance, Perrine sold marijuana to four or five friends he had known for several years.  Perrine also smoked about one-eighth of an ounce of marijuana each day to relieve the symptoms of stress, asthma, severe back pain, and attention deficit disorder and hyperactivity.

A few days before April 3, 2003, Perrine's friend Jesse Mendoza introduced him to defendant Brown.  Perrine sold $10 worth of marijuana to Mendoza and his girlfriend, and they all smoked the marijuana together.  He had four ounces of marijuana in this room that day with a street value of $1,000.  Brown was present when Perrine retrieved the marijuana from its hiding place.  Brown complimented Perrine on the marijuana and the stereo system.

Perrine returned home between 2:00 and 2:30 p.m. on April 3, 2003.  His mother and brothers were away.  When Perrine pulled into the driveway, he noticed a black Honda Accord with no license plates parked nearby.  Defendant Martinez and an unidentified driver were in the car.

Brown walked toward Perrine from the front door of the residence. He said he wanted to buy a $20 bag of marijuana. Perrine responded that he had no marijuana. At that point, Brown asked if he could use Perrine's phone to tell Jesse Mendoza to meet him in the neighborhood. Perrine approached the car and tried to shake hands with Martinez whom he did not know. Martinez ignored Perrine.

Perrine explained that his cell phone was not working, but offered the house phone to Brown.  He and Brown walked toward Perrine's room in the garage.  As Perrine unlocked the bedroom door, Brown shoved him onto the bed. Martinez joined Brown inside the bedroom.  Perrine saw Brown pull a semiautomatic gun from his waistband. He stood up and Brown touched the center of his forehead with the gun. Brown told Perrine, " '[S]it down you fuckin' [W]hite boy before I have to do somethin'." Perrine thought Brown was going to kill him. Martinez closed the door of the room and Brown said, " '[G]ive me everything, give me everything you've got, give me anything, give me the weed, give me the money, where's it all at, we're hurtin'.' " Perrine kept telling Brown he did not have anything.

Brown handed the gun to Martinez.  Martinez pointed it at Perrine and told him to stay quiet. Brown began ransacking Perrine's room.  Each time Perrine stood up, Brown shoved him back on the bed. Defendants became more threatening as Perrine denied he had anything they wanted.  Eventually, Brown found the one-half ounce of marijuana Perrine had for his personal use and demanded to know where he was hiding the rest of the marijuana. When Perrine told them it was all he had, Brown responded, " 'Bullshit.' " Brown demanded, " 'Where the F is everything at whiteboy?' "

Brown continued to search Perrine's room.  He eventually took Perrine's wallet, $300 to $400 in cash, and the marijuana.  Shortly thereafter, Perrine's brother returned in the family car.  As he entered the garage, Perrine pushed him out of the way, and defendants fled through the open door.  Perrine reported the robbery to law enforcement the following day.

3

C.  DEFENSE EVIDENCE:

Defendants called several witnesses on their behalf.  Rosalien Dolner, Brown's girlfriend, testified that Reyes Hernandez, a victim in the February 2003 shooting, approached her at "No ID Check Cashing," her place of work.  Reyes told Dolner he would not go to court if she paid him $2,000.  She said Reyes told her he knew defendants were not involved in the shooting.  Dolner testified she did not call the police, but informed Brown's attorney and assistant.  She said Brown's attorney told her if she was harassed again, "he would take care of it."  Coworkers testified that Dolner appeared frightened of Reyes, who was a regular customer.  Reyes denied Dolner's claims.[5]

## II.  PROCEDURAL BACKGROUND/ PRIOR PROCEEDINGS:

After a joint trial, a jury convicted Brown and Martinez of attempted murder (Cal. Penal Code §§ 187(a) & 664, Count One), discharging a firearm at an occupied vehicle (Cal. Penal Code § 246, Count Two), assault with a firearm (Cal. Penal Code § 245, Count Three), receiving stolen property (Cal. Penal Code § 496(a), Count Four), robbery (Cal. Penal Code § 211, Count Five), residential burglary (Cal. Penal Code § 459, Count Six) and assault with a semi-automatic firearm (Cal. Penal Code § 245 (d)).[6]  Among other enhancements, the defendants were charged with having committed the offenses alleged in counts one, two and three for the benefit of, at the direction of and in association with a street gang.[7]  The jury found the defendants guilty on all counts and found all of the special allegations to be true.[8]  The court sentenced Brown to an aggregate term of 16 years plus 23 years to life.[9]

Brown timely appealed to the Court of Appeal of the State of California, Third District,

---

[5]  Lodged Doc. No. 3, pp. 3-9.  These facts are presumed to be correct under 28 U.S.C. § 2254.

[6]  Lodged Doc. No. 3, pp. 1-2.

[7]  Lodged Doc. No. 3, p. 2.

[8]  Lodged Doc. No. 3, p. 2.

[9]  Lodged Doc. No. 3, p. 2.

which affirmed the judgment in a reasoned decision.[10]

Brown appealed to the Supreme Court of California, which denied review without citation to reason or authority.[11]

On June 16, 2008, Brown timely filed a Petition for Writ of Habeas Corpus in this Court. Brown raises four grounds for relief, several of which contain sub-arguments. Respondent concedes that Brown has properly exhausted his four grounds, but contends that Brown's second ground is procedurally barred.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[12] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[13] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[14] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

---

[10] Lodged Doc. No. 3.

[11] Lodged Doc. No 5.

[12] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-75 (2003) (explaining this standard).

[13] *Williams*, 529 U.S. at 412.

[14] *Early v. Packer*, 537 U.S. 3, 10 (2002).

'unreasonabl[y] appli[ed] clearly established Federal law.'"[15]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[16]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[17]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[18]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[19]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[20]

In applying this standard, this Court reviews the last reasoned decision by the state

---

[15] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[16] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[17] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[18] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[19] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[20] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

court,[21] which in this case was that of the California Court of Appeal.  Under AEDPA, the state

court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

by clear and convincing evidence.[22]  This presumption applies to state trial courts and appellate

courts alike.[23]

When there is no reasoned state court decision denying an issue presented to the state

court and raised in a federal habeas petition, this Court must assume that the state court decided

all the issues presented to it and perform an independent review of the record to ascertain

whether the state court decision was objectively unreasonable.[24]  The scope of this review is for

clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground
> by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does
> not supply reasoning for its decision, but an independent review of the record is
> required to determine whether the state court clearly erred in its application of
> controlling federal law.  Only by that examination may we determine whether the
> state court's decision was objectively reasonable.[25]

"[A]lthough we independently review the record, we still defer to the state court's
ultimate decision."[26]

## IV.  DISCUSSION

As noted above, Brown has raised four grounds for relief:

    1.       Joinder of the two cases violated Brown's right to due process and a fair trial.

---

[21] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[22] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[23] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[24] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[25] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[26] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

2.      The prosecutor committed prejudicial misconduct which violated Brown's rights to due process and a fair trial.

3.      Trial judge abused his discretion by allowing the prosecution to amend the information to add an attempted murder charge.

4.      Cumulative prejudice amounted to a violation of Brown's right to due process.

### A.      JOINDER OF THE CASES AND DEFENDANTS

In his first ground, Brown claims that the trial court's decision to consolidate Case No. 03F01514 (counts one through four, which arose out of the February 7, 2003, incident) with Case No. 03F04051 (counts five through seven, which arose out of the April 3, 2003, incident) was an abuse of discretion.  Brown also argues that the trial court's subsequent denial of his motion to sever the complaints and defendants[27] violated his rights to due process and a fair trial.

### 1.      TRIAL COURT'S DECISION TO CONSOLIDATE THE CASES

Brown raised this issue on direct appeal to the California Court of Appeal, which held that the trial court did not abuse its discretion in deciding to consolidate the cases.  Thus, Brown is only entitled to relief from this Court if the Court of Appeal's decision was contrary to federal law or was based on an unreasonable determination of the facts.[28]

In *United States v. Lane*[29] the Supreme Court considered the effect of misjoinder under Federal Rule of Criminal Procedure 8.  In *Lane*, the Court stated, "[i]mproper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."[30]  In extrapolating *Lane*, the Ninth Circuit has held that improper joinder, indeed,

---

[27]  Brown and Martinez were tried together on all seven charges.

[28]  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[29]  474 US 438 (1986).

[30]  *United States v. Lane*, 474 U.S. 438, 446 fn.8 (1986).

can rise to a constitutional violation.[31]   In evaluating whether a defendant has shown the requisite

prejudice "the Ninth Circuit focuses particularly on cross-admissibility of evidence and the

danger of "spillover" from one charge to another, especially where one charge or set of charges

is weaker than another."[32]

The trial court held that the two sets of charges seemed to present total cross-

admissibility and that both crimes appeared to be "classic gang activities."[33]   The Court of

Appeal agreed holding that "evidence of the same two perpetrators jointly using a semiautomatic

handgun was cross-admissible on the issue of identity."[34]   After reviewing the record, this court

cannot say that the conclusion of both the trial court and the Court of Appeal was contrary to

clearly established Federal law or was based on an unreasonable determination of the facts.[35]

Moreover, the State did not join "a strong evidentiary case with a much weaker case in

the hope that the cumulation of the evidence would lead to convictions in both cases."[36]   Despite

Brown's assertion to the contrary, there was not a notable disparity in the strength of the two

---

[31]   *Sandoval v. Calderon*, 241 F.3d 765, 771-772 (9th Cir. 2000) ("On habeas review of a
prisoner's challenge to a trial court's failure to sever trial of some counts in an indictment, we
may only grant the writ if the joinder resulted in an unfair trial.");  *Davis v. Woodford*, 384 F.3d
628 (9th Cir. 2004) (same).  *Lane* considered only the effect of misjoinder under Federal Rule of
Criminal Procedure 8, and expressly stated that no constitutional claim had been presented.
(31 continued . . . .)
 Because *Lane's* footnote concerning the constitutional implications of improper joinder did not
cite to any legal authority, and was not necessary to the holding, it was probably dictum. Only
Supreme Court holdings are controlling when reviewing state court holdings under 28 U.S.C. §
2254; Court dicta and circuit court authority may not provide the basis for granting habeas relief.
*Lockyer*, 538 U.S. at 71-72 .  However, in this case, this Court will follow the guidance of
subsequent Ninth Circuit cases which have cited *Lane* as establishing a constitutional standard.

[32]   *Woodford*, 384 F.3d at 638 (citing *Sandoval*, 241 F.3d at 772).

[33]   Lodged Doc. No. 3, p. 12.

[34]   Lodged Doc. No. 3, p. 13.

[35]   28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at
70-75 (explaining this standard).

[36]   *Woodford*, 384 F.3d at 639.

cases.  The Court of Appeal addressed this issue, noting that "[i]n each case, the victims identified [the] defendants as the perpetrators."[37]  While Perrine's credibility was later called into question, this was not before the trial court at the time of the joinder.

In support of his argument that the court should not have consolidated the charges against him, Brown cites to *Bean v. Calderon*.[38]  In *Bean*, the defendant was tried and convicted of two separate murders at a single trial.  The Ninth Circuit reversed the conviction of one of the murders, holding that the improper joinder of the two cases had resulted in prejudice to the defendant.  In reversing, the court considered several circumstances and factors.  First, the court noted that the case involved the joinder of a relatively weak murder case with a relatively strong one.  The court also noted that none of the evidence for the individual murder charges was cross-admissible.  Finally, the court considered that "the State repeatedly encouraged the jury to consider the two sets of charges in concert, as reflecting the modus operandi characteristic of Bean's criminal activities."[39]

None of these concerns is present in this case.  As noted above, the trial court found that certain evidence was cross- admissible, neither case was particularly stronger or weaker than the other, and there is no evidence that the prosecutor repeatedly asked the jury to consider the charges in concert.  Accordingly, *Bean* is distinguishable.

As a threshold matter Brown has not shown that his joinder was improper, and subsequently he has been unable to show that the decision of the Court of Appeal was contrary to clearly established Federal law or was based on an unreasonable determination of the facts.[40]

2. TRIAL COURT'S DENIAL OF BROWN'S MOTION TO SEVER THE CASES AND DEFENDANTS

---

[37]  Lodged Doc. No. 3, p. 15.

[38]  163 F.3d 1073 (9th Cir. 1998).

[39]  *Bean*, 163 F.3d at 1084.

[40]  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

Brown claims that the trial judge erred when he denied Brown's motion to both sever the charges against him and to be tried separately from Martinez.  Brown raised this issue on direct appeal to the California Court of Appeal, and the court held that the trial judge did not abuse his discretion in declining to sever the cases and defendants.

Because the trial judge did not err in consolidating the charges, and Brown has not shown that the decision had the subsequent effect of rendering his trial "fundamentally unfair," this Court will deny Brown's claim that the trial judge erred by refusing to sever the charges against him.[41]

Next, this Court will evaluate the California Court of Appeal's determination that the trial court did not err in denying to try Brown and Martinez separately.  This case does not present an appeal from a decision of a federal district court applying Federal Rules of Criminal Procedure 8 (joinder) and 14 (severance).  Rather, this case presents a California trial court's decision to deny severance based on California Penal Code § 1098.  Under AEDPA, the Court may not grant Brown relief unless it can identify one or more holdings of the United States Supreme Court that announce a constitutional rule binding on the states regarding severance.  This Court has found none.

However, there are clearly a few analogous Supreme Court cases dealing with the confrontation clause or the Federal Rules of Criminal Procedure.  In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that criminal defendants are deprived of their Sixth Amendment right to confront witnesses when a non-testifying codefendant's statement is admitted against them.

In the present case, the trial judge ensured that the joint trial would not infringe on the defendants' constitutional rights by redacting their out-of-court statements which might

---

[41] See *Grigsby*, 130 F.3d 365, 370 (9th Cir. 1997).  Because severance is the logical counterpart to joinder, the reasoning for denying this claim is fundamentally the same as the reasoning behind finding that the joinder was proper.

implicate one another.[42]  Brown has not argued that this course of action was insufficient to protect his right to cross-examine those witnesses against him.  Furthermore, Brown has not shown that the joinder of the two defendants implicated any of his specific trial rights or prevented the jury from making a reliable judgment as to his innocence or guilt.[43]  Thus, this Court cannot say the California Court of Appeal's decision on this issue was contrary to clearly established Federal law or was based on an unreasonable determination of the facts.[44]  Brown is not entitled to relief under this argument.

### B.  THE PROSECUTOR COMMITTED PREJUDICIAL MISCONDUCT WHICH VIOLATED BROWN'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL

In his second ground, Brown claims that the prosecutor committed misconduct which violated his constitutional rights.  Specifically, Brown claims that the prosecutor: 1) denigrated the reasonable doubt standard; 2) introduced facts not in evidence, and; 3)  improperly vouched for prosecution witnesses.  Respondent asserts that Brown's second claim is procedurally barred which this Court addresses as a threshold matter.

### 1.  PROCEDURAL BAR

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[45]  This Court may not reach the merits of procedurally defaulted claims, that is claims "in which the petitioner failed to follow applicable state

---

[42]  Reporter's Transcript, pp. 215-30.  Neither Martinez nor Brown testified at trial.  After defendant Martinez was in custody and had been notified of his Miranda Rights, he agreed to speak to Detective Elaine Stoops.  During this discussion, Martinez made several references to Brown; specifically, Martinez made statements which tended to place Brown at the scene of the shooting.  In lieu of granting the motion to sever the defendants, the court ordered any reference to Brown redacted, ie. language such as "we" was changed to "I".

[43]  *Id*.

[44]  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer*, 538 U.S. at 70-75 (explaining this standard).

[45]  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

procedural rules in raising the claims . . . ."[46]  Respondent claims that the California Court of Appeal applied the contemporaneous objection rule[47] to Brown's second claim, and as a result, this Court is foreclosed from hearing the claim.  Respondent is correct that the California contemporaneous objection rule is properly operative as an "adequate and independent" state procedural bar.[48]  However, the California Court of Appeal only applied the bar to *portions* of Brown's second claim, and addressed the other issues on the merits.[49]  Accordingly, this Court will only apply the procedural bar  to the claims barred by the California Court of Appeal.

## 2.  THE PROSECUTOR IMPROPERLY DENIGRATED THE REASONABLE DOUBT STANDARD

Brown claims that the prosecutor denigrated the reasonable doubt standard in a manner which violated his constitutional rights.  Brown references portions of the prosecutor's closing argument in which she referred to the reasonable doubt standard as "[y]our common sense, your experience in life and expertise in day-to-day affairs," and stated, "it's used everyday in this courthouse, in every one of these courthouses by hundreds, if not thousands of jurors."[50]  The California Court of Appeal determined that these statements, taken in context "simply referred to a standard 'used everyday in [the] courthouse' by jurors who relied on their common sense and life experience in carrying out their obligation as jurors."[51]

---

[46] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[47]  Under California law, because when a party fails to object to admission of evidence or statements on Sixth Amendment grounds, it is forfeited.  *People v. Alvarez*, 58 Cal.Rptr.2d 385, 402-03 (Cal. 1996).

[48] *See Collier v. Bayer,* 408 F.3d 1279, 1283 (9th Cir. 2005).

[49]  Lodged Doc. No. 3, p. 19.  The court applied the procedural bar to Brown's claim that the prosecutor  introduced her trial related thought process regarding her decision not to prep Jeffery Perrine (this is a sub-claim of Brown's second instance of prosecutorial misconduct) and to his claim the prosecutor improperly vouched for prosecution witnesses Perrine and Aguilar (Brown's third claim of prosecutorial misconduct).

[50]  Lodged Doc. No. 3, pp. 20-21.

[51]  Lodged Doc. No. 3, pp. 21-22.

In support of his position that these statements denigrated the reasonable doubt standard, Brown cites solely to California state law.  To the extent that Brown raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[52]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[53]  This principle applied to federal habeas review of state convictions long before AEDPA.[54]  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[55]  This is especially true where the highest court in the state has denied review of the lower court's decision.[56]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[57]  Nor may a federal court issue a habeas writ based upon a perceived

---

[52] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[53] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . . .").

[54] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[55] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[56] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.").

[57] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

14

error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[58]  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[59] Thus, in order to obtain relief in this Court, Brown must show a denial of due process, a burden which he has failed to carry.  After reviewing the record, this Court cannot say California Court of Appeal's decision that the prosecutor's statement, when taken in context, did not constitute misconduct was contrary to clearly established federal law or was based on an unreasonable determination of the facts.[60]

Even if the statement could be construed as improper, Brown would not be entitled to relief.  The Due Process Clause of the Fourteenth Amendment is violated when prosecutorial misconduct "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process."[61]  In assessing whether the conduct complained of meets this test, this Court must consider "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct."[62]  This test applies to both statements made in summation and improper questions in cross-examination.[63]  In this case, the trial court instructed the jury that both Brown and Martinez were presumed to be innocent until proven guilty, and

---

[58] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[59] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[60] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[61] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[62] *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999).

[63] *United States v. Melendez*, 57 F.3d 238, 241 (2dCir. 1995) (summation); *United States v. McCarthy*, 54 F.3d 51, 55 (2d Cir. 1995) (cross-examinations).

that the prosecution had to prove guilt beyond a reasonable doubt.[64]  The court then went on to explain the term reasonable doubt by issuing California Jury Instruction-Criminal 2.90.[65]  This Court must also assume, in the absence of evidence to the contrary, that the jury followed those instructions.[66]  Thus, even if the prosecutor's statement did constitute misconduct, it was effectively cured with the proper jury instructions.  Brown is not entitled to relief on this ground.

### 3.  THE PROSECUTOR INTRODUCED FACTS NOT IN EVIDENCE

Brown claims that on three occasions the prosecutor committed misconduct when she introduced facts not in evidence.  Specifically, Brown cites: 1) the prosecutor's comment concerning "defense counsel's protection of witnesses"; 2) the prosecutor's improper introduction of her trial strategy, and; 3) the prosecutor's improper reference to where Brown was housed in prison.

### A.  REFERENCE TO DEFENSE COUNSEL'S "PROTECTION OF WITNESSES"

As noted above, Reyes Hernandez, a victim in the February 2003 shooting, allegedly approached Brown's girlfriend, Rosalien Dolner.  Reyes allegedly told Dolner that he knew Brown was not involved in the shooting and that he would not go to court if she paid him $2,000. In response, Dolner did not call the police, but rather, informed Brown's attorney and assistant of

---

[64]  It is not disputed that the trial court instructed the jurors with CALJIC No. 1.02 (statements of counsel are not evidence), CALJIC No. 2.90 (presumption of innocence and explanation of the reasonable doubt standard).

[65]  According to CALJIC 2.90, "[r]easonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge."  The Supreme Court has held this instruction to be constitutional.  *Victor v. Nebraska*, 511 U.S. 1, 16-17 (1994); *Drayden v. White*,  232 F.3d 704, 715 (9th Cir. 2000) ("the United States Supreme Court has upheld the instruction [2.90] as constitutional.").

[66]  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985).

her exchange with Reyes.  During closing arguments, and in an apparent attempt to undercut Dolner's story, the prosecutor implied if this series of events had really occurred, Brown's defense attorney would have taken steps to inform the authorities and protect Dolner from future confrontations.  The prosecutor also stated that a defense attorney would know how to network with the prosecutor and law enforcement to work through the situation.   Defense counsel objected to this argument and the court sustained the objection and instructed the prosecutor to not reference defense counsel's action or inaction concerning this matter.

The prosecutor then proceeded to allege that if Reyes had actually confronted Dolner, in all likelihood, she or the authorities would have heard about it before Dolner testified in court. Defense counsel again objected, and the court overruled it.  Defense counsel reiterated his objection and moved for a mistrial a few minutes later.  The court denied defense counsel's motion for a new trial, holding that the prosecutor had changed the wording of her argument to not reference defense counsel.  The court also declined to issue an admonition to the jury, holding that the prosecutor's comment did not amount to misconduct and was not made in bad faith.

On direct appeal, Brown alleged that the prosecutor's argument amounted to misconduct and had deprived him of his right to a fair trial.  The Court of Appeal agreed with the trial court that the prosecutor had not committed misconduct and that no admonition was necessary.  The court further held that the prosecutor had properly adjusted her argument to focus solely on Dolner's credibility and inferences to be drawn from the evidence submitted at trial.

It has been recognized that it is not improper for a prosecutor to state generally why certain evidence was not produced by the accused or why certain facts were not disproved.[67]  In this case, the prosecutor made a single reference to a fact not in evidence and promptly corrected her argument when opposing counsel objected.  Brown has not cited any relevant law or facts

---

[67]  *United States v. Kelly*, 991 F2d 1308, 1314 (7th Cir. 1993) (prosecutors entitled to comment upon inconsistencies in the defense); *United States v. Mares*, 940 F2d 455, 461 (9th Cir. 1991) (prosecutor is entitled to comment on the weaknesses in a defendant's case).

which show that this isolated statement rendered his trial fundamentally unfair.[68]  Thus, Brown is

unable to show that the holding of the Court of Appeal was contrary to clearly established

Federal law or was based on an unreasonable determination of the facts.[69]

    B.  THE PROSECUTOR INTRODUCED HER TRIAL RELATED THOUGHT PROCESS
REGARDING HER DECISION NOT TO PREPARE PROSECUTION WITNESS, PERRINE.

      During her closing argument, the prosecutor disclosed to the jury that she did not conduct

any pretrial preparation with Jeffery Perrine and went on to explain the reasoning behind this

decision. Brown's counsel did not object during the trial, and Brown raised the issue for the first

time in his direct appeal to the California Court of Appeal.  The Court of Appeal applied the

contemporaneous objection bar to this issue,[70] and held, in the alternative, that it was without

merit.

      In his Petition to this Court, Brown claims that this constituted the improper introduction

of facts not in evidence.  Because the Court of Appeal rested its decision on the

contemporaneous objection bar, this Court is procedurally barred from hearing this claim unless

Brown can demonstrate cause for the default and actual prejudice.[71]  In his Petition and Traverse

Brown does not cite any law or facts that would allow this Court to find cause and prejudice

sufficient to overcome the procedural bar.  Accordingly, this Court is barred from hearing this

claim.[72]

---

   [68]  *See Grigsby* at 370.

   [69]  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at

70-75 (explaining this standard).

   [70]  Lodged Doc. No. 3, p. 26.

   [71]  *See Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

   [72]  On p. 55 of his Petition, Brown asserts that if this Court finds that the instances of
prosecutorial misconduct are not reviewable "due to lack of admonition requests or a due process
basis," then his trial counsel was ineffective.  These instances of alleged prosecutorial
misconduct were barred by failure to object during the trial, not due to lack of admonition
requests or a "due process bar."  According to Rules—Section 2254 Cases, Rule 2(c), "The

### C.  THE PROSECUTOR IMPROPERLY REFERENCED FACT THAT BROWN WAS BEING HOUSED IN PRISON WITH SUREÑOS.

During her closing, in an apparent attempt to rebut any inferences that may be drawn from Detective Aguilar's testimony on cross-examination, the prosecutor referenced the fact that Brown was being housed with members of the rival Sureño gang.  Brown's counsel objected and the trial judge sustained.  Brown's attorney did not ask for an admonition, and the court did not issue one.

In his direct appeal, Brown claimed that the prosecutor's reference to this "fact not in evidence" was misconduct.  The California Court of Appeal denied this claim, holding that the prosecutor's statement was not misconduct, but rather a fair comment on the evidence presented at trial concerning Brown's gang affiliation.[73]  In his petition to this Court, Brown only cites state-law holdings in support of his position that a prosecutor's reference to facts not in evidence constitute misconduct.  He does not present any challenge, based in fact or federal law, to the Court of Appeal's decision that the prosecutor's statement was a fair comment on the evidence presented at trial.

It is axiomatic that counsel has a right to discuss fully, from his or her standpoint, the evidence in a case.[74]  The charges leveled against Brown included an allegation that Brown had committed both the shooting and the robbery at the direction of, and in association with, a street gang.[75]  Accordingly, the prosecutor was entitled to comment on the evidence in support of this

---

petition must: (1) specify *all* the grounds for relief available to the petitioner."  If Brown wanted to assert that his trial counsel was deficient for failing to object during trial, he would have had to clearly present this issue to this Court, along with supporting facts and law.  *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005).  Brown has not done so.  This Court also notes that Brown's argument on this issue is self-defeating:  Brown acknowledges that, "[a] request for admonition would be fruitless where the trial court has overruled the objection."

[73]  Lodged Doc. No. 3, p. 27.

[74]  *United States v. Grassi*, 602 F.2d 1192 (5th Cir 1979) (overruled on other grounds), *United States v. Dazey*, 403 F.3d 1147, 1170 (10th Cir. 2005).

[75]  Lodged Doc. No. 3, p. 2.

theory and try to rebut any inferences to the contrary.  Thus, Brown has failed to show that the conclusion of the Court of Appeal was contrary to clearly established federal law or was based on an unreasonable determination of the facts.[76]  Brown is not entitled to relief on this ground.

4.  THE PROSECUTOR IMPROPERLY VOUCHED FOR PROSECUTION WITNESSES PERRINE AND AGUILAR.

Brown claims that the prosecutor committed misconduct by improperly vouching for the credibility of prosecution witnesses Jeffery Perrine and Detective Luis Aguilar.  With respect to Perrine, Brown essentially restates his argument that the prosecutor improperly introduced the fact that she did not conduct any pretrial preparation of Perrine.  With respect to Detective Aguilar, Brown contends that the prosecutor improperly commented on Detective Aguilar's credibility and motivation to tell the truth; namely she noted that if Aguilar lied on the stand or gave a poorly reasoned opinion, it would be used against him every time he testified in the future.

Brown's counsel did not object to either of these statements during the trial, and Brown raised the issue for the first time in his direct appeal to the California Court of Appeal.  The Court of Appeal applied the contemporaneous objection bar to this issue,[77] and held, in the alternative, that it was without merit.  Because the Court of Appeal rested its decision on the contemporaneous objection bar, this Court is procedurally barred from hearing this claim unless Brown can demonstrate cause for the default and actual prejudice.[78]  Neither in his Petition nor in his Traverse does Brown cite any law or facts that would allow this Court to find cause and prejudice sufficient to overcome the procedural bar.  Accordingly, this Court is barred from hearing this claim.[79]

---

[76]  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[77]  Lodged Doc. No. 3, p. 26.

[78]  *See Coleman*.

[79]  On p. 55 of his Petition, Brown asserts that if this Court finds that the instances of prosecutorial misconduct are not reviewable "due to lack of admonition requests or a due process

C.  TRIAL JUDGE ABUSED HIS DISCRETION BY ALLOWING THE PROSECUTION TO AMEND THE INFORMATION TO ADD AN ATTEMPTED MURDER CHARGE.

In his third ground for relief Brown claims the trial judge abused his discretion by allowing the prosecution to amend the charging information to add an attempted murder charge. Four days into the trial, and before any witnesses were called, the prosecution moved to amend the information to add a charge of attempted murder.  Counsel for the defendants protested, claiming the amendment was untimely and the defendants were prejudiced by lack of notice of the new allegation.  The prosecution maintained the exact same factual basis which supported the "firing at an occupied vehicle" charge supported a charge of attempted murder under the "kill zone theory."[80]  The judge allowed the prosecution to amend the information based on the prosecution's representation that the same facts and evidence heard at the preliminary hearing would provide factual basis for the new charge.  The judge also noted that before the trial began, the potential attempted murder charge was raised in the presence of all counsel and was even provided to defense counsel in a typed summary of the proposed disposition of the prosecution's case.[81]  The judge informed defense counsel that at the end of the people's case, defense counsel

---

basis," then his trial counsel was ineffective.  These instances of alleged prosecutorial misconduct were barred by failure to object during the trial, not due to lack of admonition requests or a "due process bar."  According to Rules—Section 2254 Cases, Rule 2(c), "The petition must: (1) specify *all* the grounds for relief available to the petitioner."  If Brown wanted to assert that his trial counsel was deficient for failing to object during trial, he would have had to clearly present this issue to this Court, along with supporting facts and law.  Brown has not done so.

[80]  The "kill zone theory" as described by the California Court of Appeal, in this case, is as follows: "The Supreme Court articulated the 'kill zone' theory of concurrent intent in People v. Bland (2002) 28 Cal.4th 313, 329: 'The conclusion that transferred intent does not apply to attempted murder still permits a person who shoots at a group of people to be punished for the action towards everyone in the group even if that person primarily targeted only one of them.  As to the nontargeted members of the group, the defendant might be guilty of crimes such as assault with a deadly weapon or firing at an occupied vehicle. [Citation.]  More importantly, the person might still be guilty of attempted murder of everyone in the group, although not on a transferred intent theory.'"

[81]  Lodged Doc. No. 3, p. 17.

21

would be permitted to show that their clients were prejudiced because they did not have the discovery or opportunity to present evidence to negate the implied mental state. At this point, the court would re-entertain defense counsel's arguments that the amendment prejudiced their cases. At the close of the people's case, neither defendant raised or renewed their objection to the amended information.

Brown raised this issue on direct appeal, claiming that the amendment was untimely and that he lacked notice of a potential attempted-murder charge. Brown also claimed that the prosecutor had misstated the law by arguing the facts revealed in the preliminary hearing supported the attempted murder charge under a "kill zone theory." With respect to Brown's claim that he lacked notice of the attempted murder charge, the Court of appeal found that the record showed the parties were aware of the possibility of an attempted murder charge (in connection with a possible plea) before the trial began. The court held that Brown's arguments with respect to the misapplication of the "kill zone theory" had not been properly raised during the trial and were therefore waived.[82]

In his Petition to this Court, Brown challenges the trial court and California Court of Appeal's factual finding that his counsel was aware of a potential attempted murder charge, he provides no evidentiary support whatsoever to controvert this holding. Rather, Brown makes a bare assertion that he was taken by surprise at this new charge and did not have an opportunity to contest the sufficiency of the evidence in support of an intent to kill. These assertions, supported by nothing more, are belied by the record.[83] Thus, Brown is unable to show that the conclusion

---

[82] With respect to this ground, Respondent has not asserted adequate and independent state law grounds as an affirmative defense. Accordingly, it is deemed waived. *See Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003) ("Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner.").

[83] Brown's counsel was both aware of the possibility that an attempted murder charge might be added and given an opportunity at the end of the people's closing to show prejudice.

of the Court of Appeal was contrary to clearly established federal law or was based on an unreasonable determination of the facts.[84]  Brown is not entitled to relief on his third ground.

### D.  CUMULATIVE ERROR AMOUNTED TO A DEPRIVATION OF DUE PROCESS

In his fourth claim for relief Brown alleges that the accumulation of the alleged errors amounted to a deprivation of due process.  Brown has failed to show a single error, let alone an error of constitutional magnitude.  "[W]here there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation."[85]  Brown is not entitled to relief on his fourth ground.

### V. CONCLUSION and ORDER

Brown is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[86]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[87]

The Clerk of the Court to enter judgment accordingly.

Dated: May 18, 2010.

---

[84] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[85] *Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir. 1999).

[86] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[87] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

  /s/ James K. Singleton, Jr.

**JAMES K. SINGLETON, JR.**
United States District Judge